NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHELLE M. LEPENDORF,

Plaintiff,

v.

THE SUPREME COURT OF NEW JERSEY *et al.*,

Defendants.

Civil Action No. 25-2154 (RK) (TJB)

**MEMORANDUM OPINION**

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon two motions to dismiss Plaintiff Michelle Lependorf's ("Plaintiff") First Amended Complaint. ("AC," ECF No. 6.) The first motion to dismiss was filed by Defendant Brian Paul, Esq., ("Arb MTD," ECF No. 15), and the second was filed by the Supreme Court of New Jersey, the Honorable Stuart Rabner, the Honorable Michael Blee, and the Honorable Glenn Grant[1] (the "Judiciary Defendants"), ("Jud. MTD," ECF No. 26). Plaintiff filed oppositions to both motions, ("Opp. to Arb. MTD," ECF No. 16; "Opp. to Jud. MTD," ECF No. 31), and a "Supplemental Opposition Letter" to Mr. Paul's Motion (ECF No. 18). Mr. Paul and the Judiciary Defendants each replied. (ECF Nos. 20, 34.) Plaintiff filed a letter requesting permission to file a sur-reply and included the proposed sur-reply. (ECF No. 21.) Plaintiff also filed a Motion for Leave to File a Second Amended Complaint. (ECF No. 29.) The Court has considered the parties' submissions and resolves the pending motions without oral

---

[1] Due to Judge Grant's retirement as the Acting Director of the New Jersey Administrative Office of the Courts, he is no longer a proper defendant in this official capacity suit. *See* Fed. R. Civ. P. 25(d).

argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Motions to Dismiss (ECF Nos. 15, 26) are **GRANTED**, and the AC is **DISMISSED**.

I. <u>BACKGROUND</u>

Plaintiff's AC spans 83 pages and consists of over 240 paragraphs. (*See generally* AC.) After nearly twenty-four years of marriage, Plaintiff, a lawyer, filed for divorce in June 2022.[2] (*Id.* at 8.)[3] Plaintiff was represented by counsel in her divorce. (*Id.* at 9.) Plaintiff's initial counsel, Deborah Nelson, Esq., recommended arbitrating the divorce and met with opposing counsel and Brian Paul, Esq., a potential arbitrator. (*Id.*) Based on the collegial dynamic between opposing counsel and Mr. Paul, Plaintiff and her counsel worried that Mr. Paul would not be neutral and expressed these concerns to him via email. (*Id.*) Mr. Paul's response "allayed" Plaintiff counsel's concerns and Plaintiff, given the "confidence" her counsel had in Mr. Paul, "fully executed" "an arbitral consent form." (*Id.* at 10.) The proceedings continued with Mr. Paul as the arbitrator. (*Id.* at 11.)

Plaintiff moved for temporary spousal support, and Mr. Paul issued a tentative decision (the "Tentative Decision") that "awarded no amounts that would enable" Plaintiff to care for her home and children. (*Id.* at 11.) Plaintiff was unsatisfied. (*Id.* at 11–12.) She specifically felt hat the decision was "sexist, grossly infantilizing and diminished Plaintiff as both a woman and a mother." (*Id.* at 12.) Plaintiff then consulted with another attorney, John Hartmann, III, Esq., who allegedly agreed that the decision was "highly sexist" (*Id.*) Mr. Hartmann also "made it clear that Mr. Paul and [Plaintiff's] husband's counsel had a long history of referring business to each other and

---

[2] The facts as set forth herein are derived from Plaintiff's AC and assumed true solely for the purpose of deciding the Motions to Dismiss. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022).
[3] Because the AC lacks consistent paragraph numbers, the Court cites the AC's page numbers.

working on cases together." (*Id.*) Plaintiff then replaced her previous counsel with Mr. Hartmann. (*Id.* at 13.) Plaintiff then learned that Mr. Paul never signed or filed the required arbitration paperwork with the Mercer County Superior Court until one week after issuing the Tentative Decision. (*Id.*) Additionally, on that paperwork Mr. Paul only disclosed one of, allegedly, many previous dealings with Plaintiff's husband and his lawyer. (*Id.* at 14–15.)

After learning of this, Mr. Hartmann requested Mr. Paul's recusal, to which Mr. Paul refused. (*Id.* at 17.) In response, Plaintiff filed an "Order to Show Cause to Stay Arbitration ("OSTC") and a motion to vacate the Arbitration Agreement ("Motion [to Vacate]")." (*Id.* at 18.) Plaintiff claims that she incurred close to $100,000 in costs litigating her divorce action. (*Id.*)

Because the judge presiding over Plaintiff's divorce was a former client of Mr. Paul's, the Mercer County Assignment Judge retained jurisdiction of the OTSC and Motion to Vacate. (*Id.* at 33.) The Assignment Judge denied the OTSC and reserved decision on the Motion to Vacate. (*Id.* at 33–34.) This allowed Mr. Paul to finalize the Tentative Decision. (*Id.* at 33.) The Assignment Judge then recused himself from the Motion to Vacate, allegedly because his daughter was being represented by Plaintiff's husband's law firm. (*Id.* at 34–35.) The Motion to Vacate was then reassigned to another judge who had a "temporally distant" "potential conflict with Mr. Paul's law firm." (*Id.* at 35.)

Plaintiff further claims that she filed complaints with the Advisory Committee on Judicial Conduct (the "ACJC") and the Office of Attorney Ethics (the "OAE") and these agencies took no action. (*Id.* at 37–39.) She also explains, however, that ACJC advised her that "it had investigated her complaint and concluded that there was no impropriety" and that the OAE advised her that it would postpone docketing her complaint due to the pending nature of her divorce action. (*Id.* at 37.) She surmises that

3

> the OAE has a policy, custom or practice of playing favorites and shielding individuals with whom they have social, personal or professional relationships from ethics investigations – particularly if they are white males [–] at the expense of economically, politically and/or professionally marginalized grievants, like Plaintiff, most of whom are members of a protected racial or gender group.

(*Id.* at 40–41.)

Despite expressing her disapproval, Plaintiff claims that Mr. Hartmann and counsel for her husband "entered into a voluntary Consent Order, pursuant to which Mr. Paul was removed as the arbitrator" and replaced by Glynn Dwyer, Esq., but, pursuant to that agreement, Mr. Paul's prior orders remained in place. (*Id.* at 41.) In addition, Plaintiff's Motion to Vacate was dismissed without prejudice. (*Id.* at 41–42.) Plaintiff then terminated her relationship with Mr. Hartmann and retained new counsel, Jasmine Story, Esq., who herself was subsequently relieved as counsel for "personal reasons." (*Id.* at 42, 44.)

Proceeding before a new judge without counsel, Plaintiff wrote a letter to the judge asking that her case be transferred to a new vicinage. (*Id.* at 44.) Plaintiff's husband also filed a motion seeking an order to compel Plaintiff to execute an arbitration agreement with Mr. Dwyer. (*Id.*) Plaintiff again retained new counsel, whom she did not identify. (*Id.* at 45.) The judge then granted Plaintiff's husband's request to compel her to execute the arbitration agreement and denied her transfer request. (*Id.* at 46.) After another disagreement with counsel, Plaintiff again retained new counsel, this her fifth lawyer on the matter, and entered into an agreement where Mr. Dwyer would re-examine Plaintiff's spousal support request *de novo*. (*Id.* at 46–47.) However, Plaintiff claims that Mr. Dwyer then "essentially rubber-stamped Mr. Paul's decision." (*Id.* at 47.)

In the meantime, Plaintiff's decision to terminate her relationship with Mr. Hartmann led to a conflict with him based on his alleged refusal to file a substitution of counsel, his alleged withholding of Plaintiff's file, issues regarding his fee, and contradictory correspondence to the

court. (*Id.* at 42–46.) Due to the fee dispute, "Plaintiff filed an application for District Fee Arbitration with the OAE's District Fee Arbitration Committee." (*Id.* at 45.) The judge presiding over Plaintiff's divorce granted Mr. Hartmann an attorney fee lien. (*Id.*) The District Fee Arbitration Committee then declined to arbitrate the fee dispute because the total amount exceeded its jurisdictional threshold. (*Id.* at 47.) Plaintiff successfully appealed this ruling, and the matter was remanded back to the District Fee Arbitration Committee (*Id.* at 48.)

"[I]n advance of resolving their divorce," Plaintiff and her husband then listed their marital home for sale. (*Id.* at 49.) Mr. Hartmann sent a letter to the real estate broker "advising her of confidential information concerning his representation of Plaintiff in her divorce, and the existence of his claimed attorney fee lien."[4] (*Id.*) This led to Plaintiff filing an ethics complaint against Mr. Hartmann with the OAE. (*Id.* at 50.) The OAE allegedly refused to address this complaint, characterizing it as a fee dispute (*Id.* at 50–51.) Plaintiff surmises that the real reason the OAE refused to address the complaint was because "some of its members, employees and/or officers have a professional or personal relationship with Mr. Hartmann and desire to shield him from an ethics investigation." (*Id.* at 51.) She further claims that the OAE's refusal to docket her complaint is "suggestive of bias," and that the "OAE dismisses grievances filed by minority grievants at a rate that is higher than for non-minority grievants." (*Id.* at 54.)

Plaintiff claims that the Judiciary Defendants "overlook, condone and or encourage the custom, policy or practice of the OAE and some of its members" and that they "are liable given

---

[4] The Court takes judicial notice of the fact that Plaintiff has twice unsuccessfully sought stays from the Supreme Court of the United States related to her fee dispute with Mr. Hartmann. *See Lependorf v. Lependorf*, 146 S. Ct. 351 (2025) (mem.); *Lependorf v. Lependorf*, No. 24A1165, 2025 WL 1582966 (June 4, 2025) (Alito, J., in chambers); Petitioners' [sic] Application for Stay of Order Issued by the Superior Court of New Jersey Pending Disposition of Petition for Writ of Certiorari, *Lependorf*, 146 S. Ct. 351 (2025); *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) ("[A] court may take judicial notice of the record from a previous court proceeding between the parties." (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988))).

5

their . . . responsibility for overseeing the operations of the OAE." (*Id.* at 51, 55.) She further contends that Judiciary Defendants have "failed to adopt and/or implement rules, policies and procedures that effectively prevent judicial agencies tasked with protecting the public, such as the ACJC and OAE, from engaging in biased or conflicted decision-making or abusing the discretion that has been reposed in them." (*Id.* at 31.) She similarly asserts that the Judiciary Defendants have failed to provide "effective rules, policies, processes and systems in place to protect vulnerable litigants from abuse and overreach by arbitrators" and that, more generally, they have failed "to adopt rules, policies and procedures that *meaningfully* deter financially empowered spouses from engaging in financially harmful conduct, in bad faith." (*Id.* at 19, 23.) She claims these failures are discriminatory because financially dependent spouses tend to be women. (*See, e.g., id.* at 28–29.)

Plaintiff brings three counts in her AC. Count One is brought pursuant to 42 U.S.C. § 1983 and Title IX and seeks damages and an injunction against the Judiciary Defendants compelling them to implement certain policies that she claims are lacking.[5] (*Id.* at 56–63.) Count Two claims retaliation under Section 1983 and Title IX and seeks damages against unspecified defendants, seemingly the Judiciary Defendants. (*Id.* at 63–67.) Count Three is brought pursuant to Section 1983 and seeks damages against Mr. Paul for his alleged failure to provide sufficient due process throughout his time as arbitrator. (*Id.* at 67–83.)

---

[5] While Plaintiff does not specify that this count is not against Mr. Paul, instead referring generally to the "individual Defendants," it is clearly not directed at him. (AC at 57.) Plaintiff notes that that "individual Defendants, at all times relevant to the allegations described herein, were acting under color of state law as the chief executives and/or functional administrators of the New Jersey Judiciary." (*Id.*) That clearly does not refer to Mr. Paul, who is not a member of the New Jersey judiciary. Moreover, elsewhere in her AC, Plaintiff uses the term "individual Defendants" to clearly only refer to the individual Judiciary Defendants. (*See id.* at 39 ("The individual Defendants are the executive and administrative leaders of the Judiciary, and they are in charge of the operations of the ACJC and the OAE.").)

6

## II. LEGAL STANDARD

### A. RULE 12(B)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear the claim. Fed. R. Civ. P. 12(b)(1). In evaluating a Rule 12(b)(1) motion to dismiss, courts must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (internal quotation marks omitted). A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.* The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268. The party invoking the federal court's jurisdiction has "the burden of proof that jurisdiction does in fact exist." *Petruska*, 462 F.3d at 302 n.3 (quoting *Mortensen*, 549 F.2d at 891).

### B. RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" must be disregarded. *Id.* at 679. Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992) (citing *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991)).

    C.     Assessing a *Pro Se* Complaint

As a general matter, in assessing *pro se* complaints, courts are obligated to "liberally construe[]" the litigant's pleading. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "[a]bsent unusual circumstances not present here, *pro se* litigants with formal legal training—like [Plaintiff]—are not afforded liberal construction of their pleadings." *See Doe 1438 v. Pa. State Univ.*, No. 22-2990, 2023 WL 3409037, at *1 n.1 (3d Cir. May 12, 2023) (per curiam); (AC at 8 (noting that Plaintiff "worked intermittently as part-time in-house counsel"). Nevertheless, all litigants, including *pro se* litigants, must put forth sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022) ("*[P]ro se* litigants . . . must still allege sufficient facts to support a claim." (cleaned up)).

**III.**    <u>**DISCUSSION**</u>

While the Court disposes of this case on threshold issues and need not address the merits, the Court simply notes that Plaintiff's AC is riddled with allegations which frequently venture into the ad hominem and conspiratorial. A sampling of Plaintiff's broad and conclusory allegations

8

with no factual support include her claims of "institutionalized sexism in New Jersey matrimonial actions," that there is "bias in the Family Courts of New Jersey," that the OAE is "discriminating against grievants based on their gender [and] race," and that "the OAE has a policy, custom or practice of playing favorites and shielding individuals with whom they have social, personal or professional relationships from ethics investigations." (AC at 29, 31, 40–41.) It is blackletter law that "conclusory or 'bare-bones' allegations" are insufficient to "survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Accordingly, while the Court is making no findings related to such, in addition to the threshold issues of immunity and standing, it is clear that there may well be significant hurdles to Plaintiff's claims surviving scrutiny under Rule 12.

### A.   THE CLAIMS AGAINST MR. PAUL ARE BARRED BY ARBITRAL IMMUNITY

Mr. Paul contends that he is immune from suit under a New Jersey statute providing that "[a]n arbitrator or an arbitration organization acting in that capacity is immune from civil liability to the same extent as a judge of a court of this State acting in a judicial capacity." N.J. Stat. Ann. § 2A:23B-14(a); (Arb. MTD at 8.) Mr. Paul is immune but as a matter of federal, not state, law. Plaintiff brings her claim pursuant to a *federal* statute, Section 1983, and state created immunities do not apply to federal claims under Section 1983.[6] *See Martinez v. California*, 444 U.S. 277, 284 n.8 (1980).

Nonetheless, similar arbitral immunity does exist as a creature of federal common law. *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. & its Locs. 656 & 985 v. Greyhound Lines, Inc.*, 701 F.2d 1181, 1185–87 (6th Cir. 1983) (explaining the common law

---

[6] Because the Court is deciding this issue under federal law, not Section 2A:23B-14(a), the Court need not address Plaintiff's argument concerning the constitutionality of Section 2A:23B-14(a). (*See* ECF No. 18.)

history of this immunity). In *Cahn v. International Ladies' Garment Union*, the United States Court of Appeals for the Third Circuit explained that an arbitrator acting "in his capacity as arbitrator . . . perform[s] quasi-judicial duties and [is] clothed with an immunity, analogous to judicial immunity, against actions brought by either of the parties arising out of his performance of his duties." 311 F.2d 113, 114–15 (3d Cir. 1962) (per curiam). In other words, "[a]rbitrators are protected from liability for acts which arise out of their arbitral functions and under their jurisdiction during the course of contractually agreed-upon arbitration hearings." *Garland v. US Airways Inc.*, 270 F. App'x 99, 104 (3d Cir. 2008) (per curiam).

Here, Plaintiff contends that arbitral immunity does not apply because Mr. Paul was acting in "clear absence of all jurisdiction." (Opp. to Arb. MTD at 12 (quoting *Kim v. Ali*, No. 24-1448, 2024 WL 5135645, at *2 (3d Cir. Dec. 17, 2024).) Not so. The scope of a judge's—or, in this case, arbitrator's—jurisdiction is a question of state law. *See Stump v. Sparkman*, 435 U.S. 349, 357 (1978). Additionally, "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Id.* at 356; *see Cahn*, 311 F.2d at 114–15 (explaining that arbitral immunity is "analogous to judicial immunity"). Under New Jersey law, an arbitrator's jurisdiction stems from the contractual agreement of the parties before the arbitrator. *See Kearny PBA Loc. No. 21 v. Town of Kearny*, 405 A.2d 393, 398 (N.J. 1979) ("The source of the arbitrator's authority is the agreement and his 'function is to comply with the authority the parties have given him in the agreement.'" (quoting *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.*, 393 A.2d 278, 283 (N.J. 1978))); *see also Fawzy v. Fawzy*, 973 A.2d 347, 354 (N.J. 2009) ("[A]rbitration . . . is, at its heart, a creature of contract." (internal quotation marks omitted)). Plaintiff admits that she "fully executed" "an arbitral consent form" on October 31, 2022, before Mr. Paul issued his decision. (AC at 10–11.) That agreement between Plaintiff and her ex-husband—whether signed

10

by Mr. Paul or formally filed with the court—vested him with jurisdiction. *See Kearny PBA Loc. No. 21*, 405 A.2d at 398.

Plaintiff contends that Mr. Paul lacked jurisdiction due to his failure to comply with certain New Jersey court rules. (*See* Opp. to Arb. MTD at 14.) Nothing about the "Arbitrator's Disclosure Form" requirement of New Jersey Rule of Court 5:1-5(b), however, professes to be jurisdictional in nature. *See* N.J. R. Ct. 5:1-5(b). The same is true of the other rules cited by Plaintiff.[7] *See* N.J. R. Ct. 5:1-4, 5:1-5; (ECF No. 21). In light of the fact that an arbitrator's jurisdiction in New Jersey derives from the parties' agreement, and the Supreme Court's directive to construe jurisdiction "broadly," the Court concludes that Mr. Paul was acting within his jurisdiction. *Stump*, 435 U.S. at 357. Accordingly, Plaintiff's claim against Mr. Paul is **DISMISSED** with prejudice. *See Sacks v. Dietrich*, 663 F.3d 1065, 1068–70 (9th Cir. 2011) (affirming district court's dismissal with prejudice on arbitral immunity grounds); *cf. Williams v. Stack*, No. 23-2685, 2024 WL 3548766, at *1 (3d Cir. July 26, 2024) (per curiam) (affirming district court's dismissal with prejudice on judicial immunity grounds).

      B.    THE CLAIMS AGAINST THE JUDICIARY DEFENDANTS ARE BARRED BY SOVEREIGN IMMUNITY

Additionally, Plaintiff sues two New Jersey judges and Chief Justice Rabner of the Supreme Court of New Jersey, each in their official capacities. (*See* AC at 5–6.) Such suits are construed as suits against the state, and the state generally enjoys the protections of sovereign immunity under the Eleventh Amendment. *See Vasilopoulos v. Essex Cnty. Prosecutors Off.*, No. 08-5603, 2009 WL 2905473, at *5 (D.N.J. Sept. 9, 2009) (citing *Will v. Mich Dep't of State Police*, 491 U.S. 58, 64, 70–71 & n.10 (1989)); *see also Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir.

---

[7] The Court has reviewed the arguments within Plaintiff's proposed sur-reply and they do not alter the Court's analysis. (*See* ECF No. 21.)

2010) ("[T]he state courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms' of the state."). Plaintiff also sues the Supreme Court of New Jersey which is, of course, also protected by sovereign immunity. (*See* AC at 5); *Dongon*, 363 F. App'x at 156. Plaintiff tries three arguments to get around that immunity, but all fall short.

First, Plaintiff seems to contend that Congress abrogated New Jersey's sovereign immunity through the passage of Section 1983, but the Third Circuit has repeatedly rejected this argument. (Opp. to Jud. MTD at 22); *e.g.*, *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Plaintiff makes the same abrogation argument regarding Title IX. (Opp. to Jud. MTD at 18–22.) While Plaintiff is correct that Title IX abrogates sovereign immunity where applicable, it is not applicable here. *See* 42 U.S.C. § 2000d-7 (abrogating sovereign immunity for Title IX claims). Title IX concerns discrimination in "any education program or activity receiving Federal financial assistance," and Plaintiff does not adequately allege that the Judiciary Defendants operated such an "education program or activity." 20 U.S.C. § 1681(a); *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 556 (3d Cir. 2017) (explaining that "Title IX's application turns primarily on whether the *defendant-entity's* questioned program or activity has educational characteristics," and warning against "transforming Title IX into a remedy for any dispute in which someone is 'potentially' learning something").

Second, Plaintiff claims that New Jersey voluntarily waived its sovereign immunity through the passage of the New Jersey Tort Claims Act. (Opp. to Jud. MTD at 27–31.) This argument fails, however, because the Act "does not expressly consent to suit in federal courts and thus is not an Eleventh Amendment waiver." *Hyatt v. Cnty. of Passaic*, 340 F. App'x 833, 837 (3d Cir. 2009) (citing N.J. Stat. Ann. § 59:2-2(a)).

Third, Plaintiff claims that she can bring her suit through the *Ex parte Young* exception to sovereign immunity. (Opp. to Jud. MTD at 22–23); *see Ex parte Young*, 209 U.S. 123 (1908). "Under the *Ex parte Young* doctrine, a state official is 'stripped of his official or representative character' and thereby deprived of the State's immunity, when he commits an 'ongoing violation of federal law.' A person who is aggrieved may therefore seek prospective relief by suing him in his official capacity." *Waterfront Comm'n of N.Y. Harbor v. Gov. of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020) (first quoting *Ex parte Young*, 209 U.S. at 159–60, then quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011)). This exception "has been narrowly construed." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 114 n.25 (1984)). It allows only for "prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages." *MCI Telecomm. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst*, 465 U.S. at 102–03).

Therefore, Plaintiff's claims, insofar as they seek damages for past conduct, must be dismissed as *Ex parte Young* does not apply. Plaintiff claims that the past actions she complains of have ongoing effects. (*See* AC at 40 ("[Plaintiff] is still living with the 'evidently partial' decisions of Mr. Paul.").) Yet, "earlier actions" having "present effect" does not make such actions "ongoing" for the purposes of *Ex parte Young*. *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023); *see Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . . .").

Plaintiff seeks an injunction compelling widespread, systemic changes to how the New Jersey state courts handle certain divorce proceedings including by the creation of a "special commission that shall be responsible for soliciting, receiving, processing, recording and

investigating complaints filed by any divorced or divorcing woman who is or was a financially dependent spouse while married" and the creation of "a new office or committee . . . that shall be responsible for overseeing the conduct of individuals who are appointed to serve as arbitrators in matrimonial proceedings." (AC at 59–60.) Even assuming *arguendo* that Plaintiff's claims for prospective injunctive relief could fall within the *Ex parte Young* exception, that exception does not help her here, as she lacks standing to pursue such claims.

To establish standing, Plaintiff "must show that she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 42, 57 (2024) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013)). The issue here is the imminence of Plaintiff's alleged injury. Because sovereign immunity forecloses her retroactive claims, she "must show that she . . . will suffer" such an imminent injury. *Murthy*, 603 U.S. at 57. Plaintiff's alleged past injuries "do not in themselves amount to that real and immediate threat of injury necessary" for standing purposes. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

"[I]mminent" injuries are frequently contrasted with "conjectural" or "hypothetical" ones. *E.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Here, Plaintiff herself characterizes her injuries in hypothetical and conjectural terms. (*See, e.g.*, AC at 16 (arguing that there is a "*risk* for biased decision making" (emphasis added)); *id.* at 22 (arguing that existing policies do not "meaningfully deter" third parties from taking certain actions (emphasis removed)); *id.* at 28 (arguing that "the loss of property for a divorcing litigant *can* be substantial" (emphasis added)); *id.* at 56 (explaining that Plaintiff is "*uncertain* that she is receiving or will ever receive fair and equitable treatment in her divorce" (emphasis added)). Moreover, Plaintiff's speculative injuries primarily stem from the Judiciary

14

Defendants allegedly not doing enough to protect her and similarly situated divorce litigants from future mistreatment by third parties. This too shows that Plaintiff's alleged injuries are too attenuated to support standing. *See Clapper*, 568 U.S. at 414 n.5 ("[P]laintiffs bear the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm. Plaintiffs cannot rely on speculation about 'the unfettered choices made by independent actors not before the courts.'" (quoting *Lujan*, 504 U.S. at 562)). While Plaintiff summarily states in her brief that the injuries she complains of "will surely continue," that is simply not supported by her AC and too speculative to confer standing. (Opp. to Jud. MTD at 23.)

Plaintiff briefly argues that other individuals may be injured by the alleged procedural defects she complains of. (Opp. to Jud. MTD at 31–33.) Even if these injuries were sufficiently imminent, plaintiffs generally "cannot rest [their] claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). The doctrine of third-party standing is an exception to this general rule. *Id.* That doctrine, however, does not apply here because Plaintiff has not adequately alleged an injury to herself. *See Teliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 189 n.4 (3d Cir. 2006) (noting that a requirement of third-party standing is that "*the litigant* has suffered an injury in fact" (emphasis added)). Additionally, even where the plaintiff has been injured, third-party standing only applies "to parties with a 'close' relationship and when there is a 'hindrance' to the [third-party] right-possessor's 'ability to protect his own interests.'" *Kim v. Hanlon*, 99 F.4th 140, 154 (3d Cir. 2024) (quoting *Kowalski*, 543 U.S. at 130). Here, Plaintiff has pleaded neither the requisite close relationship nor hindrance; she has identified no other "divorce litigants" whatsoever. (Opp. at Jud. MTD at 31–33.)

Accordingly, because Plaintiff's retrospective claims are barred by sovereign immunity

and she lacks standing to pursue her prospective claims, Plaintiff's claims against the Judiciary Defendants are **DISMISSED** without prejudice.[8] *See Merritts*, 62 F.4th at 772 (noting that dismissals on sovereign immunity and jurisdictional grounds should be without prejudice).[9]

---

[8] In light of the Court's dismissal without prejudice, Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 29) is moot. *See Fenwick v. Dukhman*, No. 13-4359, 2015 WL 1307382, at *10 (D.N.J. Mar. 20, 2015); *cf. Kelerchian v. Bureau of Alcohol Tobacco Firearms & Explosives*, No. 20-3065, 2021 WL 2910934, at *4 (3d Cir. July 12, 2021) ("Because dismissal is without prejudice, we will vacate as moot the order denying the motion for reconsideration or leave to amend.").

[9] Mr. Paul requests that the Court award him "fees and other reasonable expenses of litigation" pursuant to New Jersey state law. (Arb. MTD at 9 (quoting N.J. Stat. Ann. § 2A:23B-14(e).) This case involves federal claims brought pursuant to federal question jurisdiction. Accordingly, state fee shifting rules do not apply. *See Modzelewski v. Resolution Tr. Corp.*, 14 F.3d 1374, 1379 (9th Cir. 1994) ("[S]ince we address federal, not state claims, the federal common law of attorney's fees, and not Arizona law, is the relevant authority. Under the American rule, generally applicable in federal litigation, each side shall pay its own attorney's fees."); *see also McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 775 n.47 (3d Cir. 1990) ("State rules concerning the award or denial of attorneys' fees are to be applied in cases where federal jurisdiction *is based on diversity or if the court is exercising pendent jurisdiction*, provided such rules do not run counter to federal statutes or policy considerations." (emphasis added)). Therefore, because Mr. Paul makes no argument based on federal law to support awarding him fees and costs, the request is **DENIED**. However, Plaintiff, as a lawyer, is undoubtedly aware of the possibility of sanctions under Federal Rule of Civil Procedure 11. *See* Fed. R. Civ. P. 11(c)(2); *Fink v. Bishop*, No. 23-566, 2024 WL 863300, at *5 (D.N.J. Feb. 29, 2024) ("Rule 11 applies to *pro se* parties by its explicit terms, and a litigant's *pro se* status does not shield him [or her] from sanctions under the Rule."), *aff'd*, No. 24-1581, 2024 WL 4449746 (3d Cir. July 29, 2024).

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **GRANTED**. Claim One against Mr. Paul is dismissed with prejudice. Claims Two and Three against the Judiciary Defendants are dismissed without prejudice. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: January 30, 2026